# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| **MITZI RAYNER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. CIV-10-1055-F** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of

the final decision of the Commissioner of the Social Security Administration (Commissioner)

denying her application for disability insurance benefits. Pursuant to an order entered by

United States District Judge Stephen P. Friot, the matter has been referred to the undersigned

Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). The

Commissioner has answered and filed the administrative record (hereinafter Tr. ____). Both

parties have briefed their respective positions and thus the matter is at issue. For the reasons

stated herein, it is recommended that the decision of the Commissioner be affirmed.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed her application for disability insurance benefits on March

18, 2008, alleging that she became disabled as of April 17, 2001, due to a mental disorder

from depression, panic attacks, bipolar disorder, early onset Alzheimers, and a neck injury

resulting from a car accident. Tr. 8, 102-05, 154. The application was denied on initial

consideration and on reconsideration at the administrative level. Tr. 38-39, 40-41, 42-45, 49-

51. Pursuant to Plaintiff's request, a hearing was held before an administrative law judge on

November 5, 2009. Tr. 19-35, 54. Plaintiff appeared in person with her attorney, and she

offered testimony in support of her application. Tr. 21, 23-31. A vocational expert also

testified at the request of the administrative law judge. Tr. 31-34, 90. The administrative law

judge issued his decision on January 13, 2010, finding that Plaintiff was not disabled within

the meaning of the Social Security Act and was not entitled to disability insurance benefits.

Tr. 5-7, 8-14. Plaintiff's request for review of the administrative law judge's decision was

denied by the Appeals Council on July 28, 2010. Tr. 1-4. Thus, the decision of the

administrative law judge became the final decision of the Commissioner. Tr. 1.

## II. STANDARD OF REVIEW

The Tenth Circuit Court of Appeals has summarized the applicable standard of review

as follows:

> [W]e[1] independently determine whether the [administrative law judge's]
> decision is "free from legal error and supported by substantial
> evidence."Although we will "not reweigh the evidence or retry the case," we
> "meticulously examine the record as a whole, including anything that may
> undercut or detract from the [administrative law judge's] findings in order to
> determine if the substantiality test has been met."

---

[1]Although the Tenth Circuit Court of Appeals was discussing its own standard of review, the same standard applies to the federal district court's appellate review of social security cases. Hamilton v. Secretary of Health & Human Services, 961 F.2d 1495, 1502 n. 1 (10th Cir. 1992) ("as the second-tier appellate court, a circuit court does apply the same standard of review as the district court-the standard applicable to appellate review of individual social security cases").

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Our determination of whether the [administrative law judge's] ruling is supported by substantial evidence "must be based upon the record taken as a whole." Consequently, we remain mindful that "[e]vidence is not substantial if it is overwhelmed by other evidence in the record."

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted).

To determine whether a claimant is disabled, the Commissioner employs a five-step sequential evaluation process:

Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments."An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. At step three, the [administrative law judge] considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." If a claimant's impairments are not equivalent to a listed impairment, the [administrative law judge] must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy.

Wall, 561 F.3d at 1052 (citations omitted). The claimant bears the burden to establish a

prima facie case of disability at steps one through four. Williams v. Bowen, 844 F.2d 748,

751 & n.2 (10th Cir. 1988). If the claimant successfully carries this burden, the burden shifts

to the Commissioner at step five to show that the claimant retains sufficient residual

functional capacity to perform work in the national economy given the claimant's age,

education, and work experience. Id. at 751.

## III. THE DECISION OF THE ADMINISTRATIVE LAW JUDGE

In determining that Plaintiff was not disabled, the administrative law judge followed the sequential evaluation process set forth in 20 C.F.R. § 404.1520. Tr. 8-10. He first found that Plaintiff had not engaged in substantial gainful activity since the alleged date of onset, April 17, 2001, through the last date insured, March 31, 2005. Tr. 10. At step two, the administrative law judge found that Plaintiff suffered from the medically determinable impairment of major depressive disorder. Tr. 10. However, he found that this impairment was not severe. Tr. 10. Accordingly, the administrative law judge found at step two that Plaintiff was not disabled and was not entitled to benefits. Tr. 14.

## IV. DISCUSSION

Plaintiff raises three issues on appeal. First, she claims that the administrative law judge applied the incorrect legal standard in evaluating the severity of her impairments prior to the date she was last insured. Plaintiff's Opening Brief, 14-17. Second, she contends that the administrative law judge ignored the requirements of Social Security Ruling 83-20 and the applicability of that ruling to the facts in this case. Plaintiff's Opening Brief, 17-21. Third, and finally, she contends that substantial evidence does not support the administrative law judge's finding that she did not have a severe impairment. Plaintiff's Opening Brief, 22-23.

**A. Incorrect Application of the Duration Requirement in Relationship to the Last Date Insured**

In her first claim of error, Plaintiff alleges that the administrative law judge denied

benefits on the basis that she did not have a severe impairment for twelve consecutive months before the last date insured.  Plaintiff's Opening Brief, 14-17.  She notes the administrative law judge's finding was as follows:

> Through the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments.

Plaintiff's Opening Brief, 15 (citing Tr. 10).  The Plaintiff argues that the administrative law judge obviously believed that she must have had a severe impairment for twelve consecutive months prior to the date last insured to qualify for disability.  Plaintiff's Opening Brief, 15.

Plaintiff correctly points out that the applicable regulation provides:

> The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

Plaintiff's Opening Brief, 15 (citing 20 C.F.R. 404.1505(a)).  Thus, Plaintiff argues that the administrative law judge applied the wrong legal standard, and that the case must be remanded for a determination as to whether the disability period began before the date last insured.  Plaintiff's Opening Brief, 17.

The Commissioner responds that Plaintiff misconstrues the administrative law judge's finding, which was that Plaintiff did not prove that she had a severe impairment before her last date insured.  Commissioner's Brief, 7.  The Commissioner further argues that the administrative law judge's statement describing the legal standard – which occurred before the portion of the decision containing his finding – shows that he did indeed apply the correct

standard. Commissioner's Brief, 7-8 (citing Tr. 8). The undersigned agrees.

At most, Plaintiff has shown a mere deficiency in opinion writing. Cf. Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir.1987) ("An arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where, as here, the deficiency probably had no practical effect on the outcome of the case."). The administrative law judge here is a very experienced social security administrative law judge, and his decision, when considered as a whole, shows that he was both aware of and applied the correct legal standard with regard to the date of onset and duration.

**B. Applying the Requirements of Social Security Ruling 83-20**

In her second claim of error, Plaintiff claims that the administrative law judge ignored the requirements of Social Security Ruling (SSR) 83-20, 1983 WL 31249 (1983). Plaintiff's Opening Brief, 17. She claims this ruling establishes the framework for determining the onset of disability. Id. She relies primarily on the Tenth Circuit Court of Appeals' decision in Blea v. Barnhart 466 F.3d 903 (10th Cir. 2006):

> Additionally, SSR 83-20 provides a framework for examining injuries that are not considered of "traumatic origin" under the regulation. SSR 83-20 states that "[i]n disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." Id. The date alleged by the claimant is the starting point for determining disability onset, and the date the claimant stopped working is also of significance in selecting the onset date. Id. Medical evidence, however, is the "primary element" for the onset determination, as the onset date "can never be inconsistent with the medical evidence of record." Id. at 2-3.

> SSR 83-20 also provides that, when medical evidence does not establish the precise onset date, the [administrative law judge] may have to "infer the onset

6

date from the medical and other evidence that describe the history and symptomatology of the disease process." Id. at 2. The regulation provides two examples of situations where it may be necessary to infer an onset date: (1) in the case of a slowly progressing impairment, "when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available," and (2) when "onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination." Id. at 3. "At the hearing, the administrative law judge should call on the services of a medical advisor when onset must be inferred." Id.

Blea, 466 F.3d at 909-910.  She claims that the administrative law judge never considered that this case might present an onset date issue.  Plaintiff's Opening Brief, 19.  She also contends that there is no question that she is currently disabled, citing the opinion of her treating psychiatrist, Dr. Do.  Id.  (citing Tr. 338-40).

The Commissioner responds that SSR 83-20 is not applicable to this case because the administrative law judge "did not find Plaintiff's condition to be disabling during the relevant period of review from April 17, 2001, to March 31, 2005." Commissioner's Brief, 8.  He continues that "[w]ithout a prerequisite finding of disability, the [administrative law judge] had no need to infer a disability onset date." Id.  He also contends that Plaintiff's assertion that she is currently disabled is a blanket statement unsupported by the evidence. Commissioner's Brief, 9.

In reply, Plaintiff cites an additional Tenth Circuit decision which she contends is directly contrary to the Commissioner's argument.  Plaintiff's Reply, 4.  In that case, the Court reversed and remanded a decision of an administrative law judge finding at step five that a disability insurance benefits claimant was not entitled to benefits. Andersen v. Astrue, No. 05-4305, 319 Fed.Appx. 712 (10th Cir. Apr. 3, 2009). One of the errors raised was the

administrative law judge's incomplete analysis of the opinions of the claimant's treating

physicians. Id. at 717-718. After finding that a controlling physician's opinion cannot be

rejected solely on account of its timing in relation to the last date insured, the Court stated:

> To qualify for benefits, Mr. Andersen must be found to have become disabled
> before his insured status expired at the end of 1998. See 42 U.S.C. §
> 423(a)(1)(A). Disability is defined as the "inability to engage in any substantial
> gainful activity by reason of any medically determinable physical [ ]
> impairment ... which has lasted or can be expected to last for a continuous
> period of not less than 12 months." Id. § 423(d)(1)(A). In light of this criteria,
> the [administrative law judge] should not have treated only the few months
> surrounding December 1998 as relevant. Indeed, because Mr. Andersen's
> underlying medical condition was undisputed and permanent, the
> [administrative law judge] could make inferences about the progression of Mr.
> Andersen's impairment, relying on earlier medical evidence. See SSR 83-20,
> 1983 WL 31249, at *3 ("The available medical evidence should be considered
> in view of the nature of the impairment (i.e., what medical presumptions can
> reasonably be made about the course of the condition). The onset date should
> be set on the date when it is most reasonable to conclude from the evidence
> that the impairment was sufficiently severe to prevent the individual from
> engaging in SGA [substantial gainful activity] ... for a continuous period of at
> least 12 months...."). Therefore, to the extent that the attending physician
> statements were discounted for being from the "remote past," we find this
> reason insufficient.

Id. at 722. Plaintiff claims that the timing of her alleged disabling impairments, including

whether they existed prior to the date last insured was at issue in this case. Plaintiff's Reply,

5. The undersigned disagrees.

Although Plaintiff may be correct that a step two decision does not necessarily render

SSR 83-20 inapplicable, she has alleged that the date of onset began with her treatment at

Red Rock in Clinton, Oklahoma on April 17-19, 2001, followed immediately by her

hospitalization at Deaconess Hospital on April 20, 2001, See Tr. 296-316, and the medical

evidence she submitted clearly supports this as the date of onset. There is no evidence indicating a different date of onset, and the administrative law judge's finding in this case that Plaintiff did not have a severe impairment beginning at any point during the relevant period is supported by substantial evidence.

### C. Finding of Non-severity at Step Two

Finally, Plaintiff contends that the administrative law judge erred in finding that her mental impairment was non-severe. Conceding that she has the burden at step two to show the presence of a severe impairment, Plaintiff also notes that this burden has been described as de minimis.  Plaintiff's Opening Brief, 22 (citing Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988)).  She argues that a claimant should be denied benefits at step two only if the impairments are so slight that they "could not interfere with or have a serious impact on the claimant's ability to do basic work activities."  Plaintiff's Opening Brief, 22 (quoting Williams, 844 F.2d at 751)).  She states that although the administrative law judge noted the fact that she had been hospitalized, he failed to acknowledge the seriousness of her condition as reflected in the notes of her 2001 hospitalization – including notes that she was very paranoid with GAF scores of 20 on admission and 35 on discharge.  Plaintiff's Opening Brief, 22.  She notes that the administrative law judge acknowledged her treatment by Dr. Head in 2003, her treatment by Dr. Hays prior to the last date insured, and her second hospitalization shortly after her last date insured.  Plaintiff's Opening Brief, 23.  She claims that this evidence simply does not support a finding that her impairment did not meet the de minimis standard.  Id.

The Commissioner responds that the administrative law judge used the special technique to evaluate Plaintiff's impairment of major depressive disorder, and that he properly determined that she had no more than mild limitations in activities of daily living, social functioning, and concentration persistence and pace. Commissioner's Brief, 10. He claims that Plaintiff had very little treatment "during the relevant period of review," and that evidence from her April 2001 hospitalization shows that her mental impairment was adequately controlled by medication. Id. He claims that Dr. Head's notes for treatment between June 2003 and October 2003 reveal no significant abnormalities, and that Plaintiff's function report showed that she drove a car, cared for a pet, prepared meals, shopped for groceries, performed household chores, and managed finances. Commissioner's Brief, 10-11.

The Commissioner further contends that Plaintiff must show more than the mere presence of a condition or ailment, and that her depression diagnosis and prescription medications do not prove disabling limitations. Commissioner's Brief, 11. He further claims that Plaintiff's reliance on GAF scores to show a severe impairment is not evidence of a severe impairment but "are one-time measurements that may fluctuate over time." Id. (citing Petree v. Astrue, No. 07-5087, 260 Fed. Appx. 33, 41-42 (10th Cir. Dec. 28, 2007). Finally, he claims that evidence after the last date insured does not prove any disabling limitations during the relevant period. Commissioner's Brief, 12. The undersigned agrees.

Plaintiff was treated by psychiatrist Haskell Head, M.D. during her 2001 hospitalization, and his discharge summary indicates that she was to receive follow up at

10

"Psychiatric Corporation" and with her primary therapist. Tr. 306. However, there is no evidence of any follow up from that hospitalization; in fact, there is no medical evidence reflecting any treatment until June 11, 2003, when Dr. Head's treatment notes indicate that he saw Plaintiff on four occasions from that date up to October 8, 2003. Tr. 211-14. As discussed by the administrative law judge, Dr. Head's treatment notes over this brief period include findings that Plaintiff's thought process was intact/logical; she had no delusions or hallucinations; had no thoughts of suicide or homicide, was oriented times four; had no memory or attention/concentration problems; and exhibited an euthymic mood. Tr. 12, 211-214.

The next medical record pertaining to depression before the last date insured was an office visit note of Plaintiff's primary care physician, Dr. Gary G. Hays, from February 7, 2005. Tr. 265. On that date, Plaintiff saw Dr. Hays with complaints that her heart was racing all the time and of irregular menses. Tr. 265. Dr. Hays noted Plaintiff's depression, and prescribed Prozac, Atenolol, and Seroquil. Id. About two weeks after the last date insured, Plaintiff again saw Dr. Hays, and her reported symptom was "See Dr. Chioco, psych." Tr. 264. Dr. Hays again noted depression, but discontinued Plaintiff's Lexapro, Prozac, Ambien, and Seroquil. Tr. 264. Plaintiff's disability report indicates that she saw Jose Chioco, M.D. in 2005 for "mental illness and early onset Alzheimers." Tr. 157. However, there are no specific dates listed; she describes the date of her first visit as "unknown" and her last visit as "2005." Tr. 157. She also lists some medications prescribed by Dr. Chioco – Aricept, Carmoski, Geodon, Lamictal, Lorezapam, and Wellbutrin, but there are no records from Dr.

11

Chioco contained in the medical evidence of record. <u>See</u> Tr. 160.

On July 12, 2005, Plaintiff again received inpatient psychiatric treatment at Deaconess Hospital – over three and a half months after her date last insured. Tr. 215-20. The admission note from Deaconess indicates that Plaintiff had "recently had multiple med changes by Dr. Chioco." Tr. 215. The discharge notes from Deaconess Hospital indicate that Geodon and Prozac were discontinued, her Lamictil dosage increased, and Ativan and Trazodone were added. Tr. 217. The discharge summary notes that Plaintiff responded "fairly well" to her medication changes, and that she was discharged two days later on July 14, 2005. Tr. 217.

Plaintiff's treating physician during her July 2005 hospitalization was psychiatrist Thang Do, M.D. His discharge diagnosis was bipolar disorder, NOS and anxiety disorder, NOS. Tr. 217. He states that "she will see me in a couple of weeks." Tr. 217. However, the next medical record touching on Plaintiff's mental impairment are notes from two visits with Dr. A. Lee Guinn, M.D. in Corpus Christi, Texas: February 27, 2006, and March 30, 2006. Tr. 221-24. Dr. Guinn noted Plaintiff's history of chronic mental ailments in his initial report from her first visit, but upon examination found "no unusual anxiety or evidence of depression." Tr. 221-22. She did report her two hospitalizations, which she characterized as "psychosis/drug reaction." Tr. 221. One month later Dr. Guinn observed Plaintiff to be anxious, as having depressed mood, as well as experiencing sleep disturbance and mood swings; he at that time referred her to not one but two different psychiatrists – one to be seen "ASAP" and the other within the next week. Tr. 225. However, the only thing in the record

indicating that she saw any mental health care provider while in Corpus Christi was her report that she saw Danny L. Dubberly for "psychiatric condition." Tr. 189. However, there is nothing in the medical record reflecting treatment by a Dr. Dubberly and he was not one of the psychiatrists to whom Dr. Guinn referred her.

The next references in the record as to Plaintiff's mental impairment are monthly treatment notes from Dr. Do beginning February 13, 2007, almost two years after Plaintiff last met the insured status requirements. Tr. 275-285. In notes from Plaintiff's March 3, 2008 visit, approximately three years after she last met the insured status requirements, Dr. Do indicates that Plaintiff had moved back from Corpus Christi to Clinton, Oklahoma, and was wanting to re-establish as a patient. Tr. 284. Although many notes from this period are illegible, Dr. Do described Plaintiff as paranoid and delusional, Tr. 285; anxious, Tr. 282-84; anxious with loose cognition, Tr. 283; bipolar mixed with psychosis, panic disorder with agoraphobia, Tr. 283; still uncomfortable riding in a car, Tr. 281; as having obsessive negative thoughts, Tr. 280; and as confused and forgetful. Tr. 275. On Plaintiff's October 17, 2008, visit, Plaintiff's husband reported Plaintiff had no major problems, she had improved and she was sleeping well. Tr. 276. The administrative law judge made note of Dr. Do's mental status examination prepared over four years after the date last insured. Tr. 13. In this report, dated November 2, 2009, Dr. Do indicated that he had seen Plaintiff approximately every two months, and that contacts were limited due to finances. Tr. 338. He found that she had extreme limitations in activities of daily living, social functioning, and constant limitations in concentration, persistence and pace. Tr. 340. The administrative law

13

judge found this report to have little relevance as Dr. Do did not begin treating Plaintiff until after her date last insured, and because the assessment itself was prepared well after that date.[2]  Tr. 13.

The administrative law judge gave "great weight" to the opinions of the non-examining medical consultants as reflected in their reports and by the Psychiatric Review Technique (PRT) form in which they found "insufficient medical evidence" to substantiate the presence of a mental disorder or to show any limitation from a mental disorder.  Tr. 12-13, 234-46, 286-87.

However, the administrative law judge made the following findings regarding the functional limitations resulting from Plaintiff's mental impairment.  He noted Plaintiff's report that she fixes meals, does housework, shops, pays bills, feeds her cat, does laundry, and takes out the garbage with assistance from her husband.  Tr. 13.  He further noted that she takes care of her own personal care, albeit with anxiety, walks, drives a car, and sometimes goes out alone.  Tr. 13.  He also made note of the function report submitted by Plaintiff's husband, who reports that she has no problem with personal care although she

---

[2]In a mental status exam dated January 12, 2009, Dr. Do indicated that Plaintiff was extremely anxious, disheveled, labile, unable to care for her basic needs at an acceptable level, barely able to handle the tasks of daily living, and unable to respond to work pressure, supervision, or coworkers.  Tr. 288.  He stated she had a chronic, poor prognosis, and he anticipated fleeting improvement with frequent exacerbations.  Tr. 288.  He also wrote a letter "To Whom it May Concern" on August 4, 2009, indicating he had been Plaintiff's treating psychiatrist for about the last five years, indicating that he had treated her in a variety of settings, that she has a severe and complex myriad of symptomatology, and that these symptoms cause major difficulty with the most basic of tasks, especially those requiring interaction with others, adding that "she is definitely unable to maintain any effective vocation."  Tr. 336.

needs reminders to take her medication, that she is able to drive locally and goes grocery shopping, and is able to do cleaning, dusting, and laundry. Tr. 13. Based on this evidence, the administrative law judge rated Plaintiff's degree of limitation with regard to daily activities as "mild." Tr. 13.

With regard to social functioning, the administrative law judge noted Plaintiff's report that she has one friend she sees monthly and talks to on the phone occasionally, goes to the grocery store only to buy necessary items, and has no other social activities. Based on this evidence he rated her limitation in social functioning as "mild." Tr. 13.

In considering the effect of her impairment on concentration, persistence, and pace, the administrative law judge noted Plaintiff's claims that she can only pay attention for 5-10 minutes, cannot finish what she starts, and cannot follow instructions without getting confused, but considered the fact that her "treating psychiatrist in 2003 reported objective findings" of intact/logical thought process, no delusions or hallucinations, intact judgment and good insight, alert and oriented times four, normal attention /concentration, and no memory problems. Tr. 13. Based on this evidence, he rated Plaintiff's limitation in concentration, persistence, and pace as "mild." Tr. 13. The administrative law judge noted no episodes of decompensation of extended duration. Tr. 13. Because Plaintiff's mental impairment caused no more than mild functional limitations, he found her mental impairment to be non-severe. Tr. 13 (citing 20 C.F.R. 404.1520a(d)(1)).

The undersigned finds that the administrative law judge's finding at step two is supported by substantial evidence. Although Plaintiff did receive treatment for her mental

impairment off and on between April 17, 2001 and March 31, 2005, there is no evidence that Plaintiff's ability to perform basic work activities was significantly limited for any consecutive 12 month period beginning during that period. Although there are passing references to additional medical treatment, there is nothing in the medical record reflecting the time, nature, or duration of treatment by any mental health providers other than those considered by the administrative law judge. Even if it is a de minimis burden, it is nonetheless Plaintiff's burden to provide evidence showing severity of her impairment at step two. The undersigned finds that the decision by the administrative law judge that she has not done so in this case is supported by substantial evidence.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the administrative law judge, and the pleadings and briefs of the parties, the undersigned Magistrate Judge finds that the administrative law judge applied the applicable legal standards and his decision is supported by substantial evidence. Accordingly, it is recommended that the final decision of the Commissioner of Social Security Administration be affirmed. The Plaintiff is advised of her right to file an objection to the Report and Recommendation with the Clerk of this Court by September 7, 2011, in accordance with 28 U.S.C. § 636 and Fed.R.Civ.P.72. This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 18th day of August, 2011.

_____
DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE